UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
EXPORT DEVELOPMENT CANADA,                                  :
                                                            :           21-CV-3758 (NRB) (RWL)
                              Plaintiff,                    :
                                                            :           **ORDER ON FEES**
              - against -                                   :
                                                            :
EAST COAST POWER & GAS, LLC,                                :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      This is an action to enforce an arbitration award.  On July 8, 2024, the Court issued an order awarding attorney's fees to Plaintiff Export Development Canada ("EDC") pursuant to Rule 37 of the Federal Rules of Civil Procedure against Defendant East Coast Power & Gas, LLC ("East Coast") in connection with having successfully compelled production of the document referred to as the Kowal Report that East Coast mischaracterized on its privilege log and withheld as privileged or otherwise protected. (*See* Dkts. 97, 106.)   As noted in the July 8 order, East Coast's response to the motion for sanctions did not even attempt to justify the positions East Coast took with respect to the Kowal Report.  (Dkt. 106 at 1.)  The Court found that East Coast's characterization of the Kowal Report as prepared "for legal analysis" was fictional. (*Id.* at 2.)  The Court then directed EDC to file an application for fees and expenses "associated specifically with compelling production of the Kowal Report (not all issues associated with deficiencies in East Coast's privilege log)." (*Id.*)  EDC filed its application on July 22, 2024 (Dkt. 115), and East Coast responded on August 5, 2024. (Dkt. 125.)  Additional correspondence

1

followed. (Dkt. 126-27.) The instant order resolves the amount of fees awarded and who must pay them.

## Discussion

Much like how East Coast's response to EDC's application for sanctions was "taken up by irrelevant and non-responsive subject matter" (Dkt. 106 at 1), much of EDC's response to East Coast's fee application is devoted to rehashing the merits of the sanctions motion and raising arguments that East Coast could have raised in opposition to the application for sanctions but failed to do. (*See* Dkt. 125 at 1-5.) The Court will not reconsider matters already resolved, nor consider arguments that have been waived.

Presently, there are three issues for the Court to determine: (1) which filings qualify as "associated specifically with compelling production of the Kowal Report (not all issues associated with deficiencies in East Coast's privilege log)," (2) the amount of reasonable fees incurred in connection with those tasks, and (3) whether the fee award should be imposed on East Coast, East Coast's attorneys, or both. The Court addresses each issue in turn.

**A.     The Associated Tasks**

EDC's fee application is broken out by work performed in connection with particular filings as follows: (1) EDC's April 1, 2024 letter motion requesting production of the Kowal Report (Dkt. 81); (2) EDC's April 9, 2024 letter motion for permission to brief the sufficiency of the declaration of Michael Kowal (the "Kowal Declaration") submitted by East Coast to discharge East Coast's burden of proof with respect to privilege (Dkt. 88); (3) EDC's memorandum of law concerning the Kowal Declaration (Dkt. 93); (4) EDC's reply brief concerning the Kowal Declaration (Dkt. 95); (5) EDC's June 20, 2024 letter

responding to East Coast's letter motion to change the Court's findings of fact (Dkt. 99); (6) EDC's June 27, 2024 letter motion in support of its request for fee-shifting (Dkt. 102); (7) EDC's July 2, 2024, reply letter in support of its request for fee-shifting (Dkt. 104); and (8) EDC's fee application. (Dkt. 115.)[1] All of these filings were the result of East Coast's repeated efforts to obfuscate and prevent disclosure of the Kowal Report. They all are "associated specifically with compelling production of the Kowal Report" and not with other alleged deficiencies in East Coast's privilege log or other discovery issues.

**B.   The Amount Of Fees**

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *Tackie v. Keff Enterprises LLC*, No. 14-CV-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014). The Second Circuit has held that "the lodestar … creates a 'presumptively reasonable fee.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008), and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010)); *see also Stanczyk v. City of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (reaffirming *Millea*). To arrive at a lodestar calculation, "[t]he party seeking an award of [attorney's] fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). EDC has

---

[1] "Under Rule 37 … a party may be compensated for the cost of making the sanctions motion itself." *Walker v. Carter*, No. 12-CV-05384, 2017 WL 3668585, at *3 (S.D.N.Y. July 12, 2017) (citing cases), *aff'd*, 739 F. App'x 72 (2d Cir. 2018).

3

submitted such evidence here, consisting of the Declaration of David Mannion – EDC's attorney – along with billing records.  (Dkt. 115-1 ("Mannion Decl.") and Ex. G.)

### 1.     Hourly Rates

Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits.  *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983).  "The rates used by the court should be current rather than historic hourly rates."  *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citations omitted).  "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted."  *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks and citations omitted).  "[T]he range of rates that plaintiff's counsel actually charge their clients … is obviously strong evidence of what the market will bear."  *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

EDC is represented by the firm Blakely LC.  The only timekeeper for whom fees are sought is Blakely LC member David Mannion.  Mannion was admitted to the New York bar in 2007, joined Blakely LC in February 2011, and since then has devoted approximately 90% of his practice to serving as lead counsel in litigation involving fraudulent transfer claims in federal district courts.  (Mannion Decl. ¶ 25 and Ex. H.)  Mannion's regular hourly rate is $465.  (*Id.* ¶ 24.)  The Court finds that that rate is

reasonable for a lawyer with Mannion's experience for similar cases in this District.  *Cf. 136 Field Point Circle Holding Co. LLC v. Razinski*, No. 19-CV-5656, 2022 WL 950980, at *5 (S.D.N.Y. March 30, 2022) (finding hourly rate of $550 was reasonable in breach of contract case that, unlike the instant matter, was "straightforward" and "short lived"); *Bank of Communications, New York Branch v. Ocean Development America, Inc.*, No. 07-CV-4628, 2014 WL 6838502, at *3 (S.D.N.Y. Dec. 4, 2014) (ten years ago, finding rates of $485 and $450 per hour for attorneys on a fraudulent-conveyance case to be reasonable); *In re Palermo*, No. 08-CV-7421, 2011 WL 3874866, at *20 (S.D.N.Y. Sept. 2, 2011) (approving, thirteen years ago, rates of up to $525 per hour for attorneys at small firm, after trial of fraudulent-conveyance claim).  Mannion's rate is all the more reasonable when viewed in the context of the discounts applied by Blakely LC as discussed below.  Notably, East Coast's opposition does not challenge the reasonableness of Mannion's hourly rate (although it does challenge some of the tasks performed by Mannion as ones that should have been performed by someone for less or no fees).

**2.   Hours Worked**

To determine compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case."  *Tlacoapa v. Carregal*, 386 F. Supp.2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Gierlinger*, 160 F.3d at 876 (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235-36 (2d Cir. 1985)).  "The relevant issue ... is not whether hindsight

5

vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).  A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

The time records submitted by Mannion are thorough and detailed.  In the relatively few instances of block-billing, the application appropriately discounts the time reflected.  The fee application "waives" all time spent by Blakely LC's paralegal, which amounts to a $5,010.00 reduction of actual fees incurred.  (Mannion Decl. ¶ 5.)  The fee application also applies discounts of 0% to 50%, depending on the specific filing at issue.  The hours expended, total fee amount, and discounted requested fee amount sought are as follows:

| Filing | Time | Fee | Waiver | Requested Fee |
|---|---|---|---|---|
| April 1 Letter | 14.4 | $5,998.50 | 33% | $3,999.00 |
| April 9 Letter | 17.4 | $4,712.00 | 33% | $3,141.00 |
| Brief re Kowal Aff. | 29.2 | $13,578.00 | 0% | $13,578.00 |
| Reply re Kowal Aff. | 8.8 | $4,092.00 | 0% | $4,092.00 |
| June 20 Letter | 9.0 | $2,883.00 | 20% | $2,306.00 |
| June 27 Letter | 19.4 | $9,021.00 | 33% | $6,014.00 |
| July 2 Letter | 8.1 | $3,766.50 | 20% | $3,013.20 |
| Fee Application | 23.1 | $10,741.50 | 50% | $5,370.75 |

| Paralegal | -- | $5,010.00 | 100% | $0.00 |
| --- | --- | --- | --- | --- |
| **TOTAL** | **129.4** | **$59,802.50** | **30.58%** | **$41,513.95**[2] |

(*See* Mannion Decl. ¶¶ 8-22.) As the table demonstrates, the time devoted to work associated with compelling production of the Kowal Report was 129.4 hours, and the total fees incurred were $59,802.50. However, EDC waives a substantial portion – 30.58% – of the total fees associated with compelling production of the Kowal Report. The net total fees requested is $41,513.95, representing approximately 90 hours of work at Mannion's reasonable hourly rate.

East Coast argues that the fees sought include fees for tasks that are not properly associated with EDC's moving to compel production of the Kowal Report. (*See* Dkt. 125 at 6-7 and nn. 12-15.) The Court disagrees. For instance, "reviewing attorney-client privilege and work product case-law cited by East Coast ConEd appeal" directly relates to EDC's moving to compel, particularly given the decision in the ConEd case finding that the Kowal Report was not protected. Similarly, "reviewing prior letter motions as relevant to privilege brief" directly pertains to the issue as the brief necessarily recounted key aspects of those prior motions.

East Coast also argues that the fees sought are unduly high because Mannion, a partner, "acted as his own paralegal and performed clerical work." (Dkt. 125 at 8.) That argument has some merit. *See, e.g.*, *Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, No. 23-CV-5262, 2024 WL 3409278, at *10 (S.D.N.Y. July 15, 2024) (collecting

---

[2] In his declaration, Mannion states that EDC is waiving a total of $23,666.21. (Mannion Decl. ¶ 5.) By the Court's calculation based on the specific breakdown set forth by Mannion in his declaration and summarized in the table above, the total fee waiver is $59,802.50 - $41,513.95 = $18,288.55.

7

cases and stating that "a review of the bills reflects that there were tasks conducted by partners that could have been conducted by counsel or associates, and tasks conducted by counsel or associates that could have been conducted by the paralegals, which itself warrants a reduction in the overall fee award"). For instance, some entries include "check all case citations," a task typically performed by a paralegal at a far lower billing rate than a senior attorney. But some of the tasks East Coast characterizes as administrative and clerical – such as revising, editing, and finalizing a brief (Dkt. 125 at 7 n.15) – are, to the contrary, non-administrative and non-clerical tasks ordinarily and appropriately performed by an attorney. In any event, by having waived 30% of the total hours/fees incurred, the fee application already has built in deductions that account for many of the warranted task-specific adjustments.

That said, the Court finds that the hours expended for the two briefs directed at the Kowal Declaration should be discounted as well for similar reasons. Accordingly, the Court will discount those amounts by 20%. As a result, the following amounts will be awarded:

| Filing | Time | Fee | Discount | Awarded Fee |
|---|---|---|---|---|
| April 1 Letter | 14.4 | $5,998.50 | 33% | $3,999.00 |
| April 9 Letter | 17.4 | $4,712.00 | 33% | $3,141.00 |
| Brief re Kowal Aff. | 29.2 | $13,578.00 | 20% | $10,862.40 |
| Reply re Kowal Aff. | 8.8 | $4,092.00 | 20% | $3,273.60 |
| June 20 Letter | 9.0 | $2,883.00 | 20% | $2,306.00 |
| June 27 Letter | 19.4 | $9,021.00 | 33% | $6,014.00 |
| July 2 Letter | 8.1 | $3,766.50 | 20% | $3,013.20 |
| Fee Application | 23.1 | $10,741.50 | 50% | $5,370.75 |

| Paralegal | -- | $5,010.00 | 100% | $0.00 |
|---|---|---|---|---|
| **TOTAL** | **129.4** | **$59,802.50** | **36.5%** | **$37,979.95** |

The total amount awarded represents approximately 82 hours of work at Mannion's reasonable hourly rate.

In the abstract, the hours and fees incurred by EDC in connection with compelling production of one document may seem high. In the proper context, however, and as discounted as described above, they are quite reasonable. That is because East Coast's improper claim of privilege over the Kowal Report required several rounds of letter-writing and briefing over many months before EDC ultimately succeeded in compelling its disclosure. In sum, the Court finds that $37,979.95 is a reasonable fee award associated with EDC's compelling production of the Kowal Report.

**C.    Who Must Pay**

In its fee application, EDC asks that fee sanctions be imposed not on East Coast but instead on East Coast's attorneys. (Dkt. 115 at 1-3.) EDC argues that imposing sanctions on East Coast but not its attorneys will be toothless because East Coast, having already failed to pay the multi-million judgment owed to EDC, will simply view the sanction as an acceptable cost that it may never pay, and will be undeterred from further efforts to block discovery into its alleged fraudulent transfers. EDC also asserts that East Coast's lawyers are responsible for the way the Kowal Report was described on East Coast's privilege log as "Draft Attorney Memorandum For Legal Analysis," even though, as the Court found, the memo contains no legal analysis and is purely a factual recounting of East Coast's business ills attributed to its prior CEO, Vincent Palmieri. (*See* Dkt. 97 at 1-3.)

Rule 37 of the Federal Rules of Civil Procedure expressly contemplates that fees awarded under Rule 37 are to be imposed on "the disobedient party, the attorney advising that party, or both." Fed. R. Civ. P. 37(b)(2)(C); *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir. 1990) (affirming district court's holding plaintiff and plaintiff's counsel jointly and severally liable for monetary sanction where plaintiff and its counsel "were each equally responsible for the failure to comply with discovery requests and court orders"). "While the case law makes clear that joint and several sanctions against parties and their attorneys are available when the court finds both to be equally at fault, the court has wide discretion to consider the entire record before it when selecting the appropriate sanction." *Lan v. Time Warner, Inc.*, No. 11-CV-2870, 2016 WL 928731, at *2 (S.D.N.Y. Feb. 9, 2016) (quoting *Hunt v. Enzo Biochem, Inc.*, No. 06-CV-170, 2011 WL 4840713, at *7 (S.D.N.Y. Oct. 12, 2011)). Accordingly, if warranted, the Court may require that sanctions be paid by only a party's attorney rather than the party. *See Kyros Law P.C. v. World Wrestling Entertainment, Inc.*, 78 F.4th 532, 546 (2d Cir. 2023) (affirming Rule 37 monetary sanction imposed on attorney only for failing to make good faith effort to comply with order to supplement interrogatory responses, and stating "[b]oth logic and the text of Rule 37(b)(2)(C) dictate that a court may impose sanctions in a targeted way against the actors whom it identifies as responsible for misconduct, whether those be parties, their attorneys, or both").

Here, both East Coast and its attorneys are responsible for mischaracterization and perpetuating mischaracterization of the Kowal Report for the purposes of cloaking it with attorney-client privilege and work-product protection. East Coast bears initial responsibility, having imprinted the cover page of the Report as "Attorney Client

10

Privilege," "Attorney Work Product," "Prepared At The Request Of Counsel," and "Prepared In Anticipation Of Litigation." Additionally, in defending the Kowal Report as protected, Michael Kowal – corporate in-house counsel for East Coast – submitted the Kowal Declaration, which the Court already has found is at odds with East Coast's interrogatory responses, and attests that the Report was prepared "for the purpose … ascertaining [East Coast]'s current and potential future legal exposure to creditor claims" even though the document is "devoid" of any "legal analysis, no allusion to any looming legal case, or any other indicia of preparation in anticipation of litigation." (Dkt. 97 at 2-4.) East Coast thus bears initial and direct responsibility for mischaracterization of the Kowal Report and the motion practice that led to revealing the document was not as described and should have been produced.

East Coast's attorneys, however, also bear responsibility. Regardless of the work-product and attorney-client privilege markings on the cover page of the Kowal Report, a review of the document reveals that it is purely a financial analysis for the expressly-stated purpose of winding down East Coast as a business, with no discussion of legal issues or advice or anticipated litigation that would merit withholding the document from production. Any attorney conducting reasonable due diligence in evaluating privilege and work-product protection should have made that assessment. Similarly, reasonable due diligence would have revealed that "the purpose of the investigation, and its results, were disclosed by East Coast in its counterclaim [in a prior lawsuit]" against ex-CEO Palmieri. (Dkt. 97 at 3.) East Coast's counsel also submitted the problematic Kowal Declaration, and, over the course of multiple rounds of letters and briefing, continued to resist production of the Kowal Report for more than a year – even while a Special Master

11

overseeing discovery in another creditor lawsuit against East Coast found that the Kowal Report was not protected by either attorney-client privilege or work-product protection. (*See* Dkt. 81-1 (Special Master's ruling); Dkt. 97 (this Court's order granting EDC's motion to compel and citing the Special Master's ruling).)

East Coast offers two arguments why the fee award should not be imposed on East Coast's counsel. First, East Coast asserts that EDC sought sanctions only against East Coast, not its counsel, and thus should be bound by that request. (Dkt. 125 at 9.) That argument is a bit glib. EDC sought "EDC's legal fees incurred in its 15-month effort to obtain [the Kowal Report]." (Dkt. 102 at 1.) EDC did not specifically address whether the fees should be imposed on East Coast, its attorneys, or both, and the Court's previous rulings did not address the issue. In any event, the issue has now been briefed, and the Court may appropriately impose fees "in a targeted way against the actors whom it identifies as responsible for misconduct, whether those be parties, their attorneys, or both." *Kyros Law P.C.*, 78 F.4th at 546.

Second, East Coast states that "the attorney who had been primarily handling the matter … has recently been diagnosed with a serious illness, which he apparently had been suffering from for some time." (Dkt. 125 at 10.) That earns the Court's sympathy and well wishes for the ill attorney, but it does not advance East Coast's argument for multiple reasons. First, East Coast makes no connection between the attorney's illness and his ability to fulfill his professional obligations. Second, the series of events at issue concerning East Coast's claim of privilege over the Kowal Report has extended for more than a year, yet East Coast is vague about the timing of the "recent" diagnosis and length of "suffering for some time." Third, and most importantly, East Coast is represented by a

12

firm with multiple attorneys – indeed, three individual attorneys are listed as counsel of record. Even East Coast acknowledges that the ill attorney was "primarily" responsible, implicitly conceding other attorneys were responsible as well even if not primarily so.

The Court thus concludes that East Coast's outside litigation counsel bears responsibility along with East Coast in resisting production of the Kowal Report. Rather than simply impose joint and several liability for the entire fee award, however, the Court finds that East Coast's culpability is greater than that of its attorneys, particularly given the original privilege and work-product markings on the Kowal Report, and East Coast's representations made through the Kowal Declaration. Accordingly, the Court deems it equitable to hold East Coast's litigation counsel jointly and severally liable for only half of the fees awarded, while East Coast is responsible for the entire award.

## Conclusion

For the foregoing reasons, and those stated in the Court's orders at Dkts. 97 and 106, the Court awards fees pursuant to Rule 37 of the Federal Rules of Civil Procedure to Plaintiff Export Development Canada in the amount of $37,979.95. Defendant East Coast Power & Gas, LLC is solely responsible for paying $18,990.00 of the award. Defendant East Coast Power & Gas, LLC and its counsel of record, Levitt LLP, are jointly and severally liable for the remaining $18,989.95 of the award. To the extent not discussed above, the Court has considered East Coast's other arguments and found them to be either moot or without merit.

SO ORDERED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: October 9, 2024
       New York, New York